IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORH CAROLINA
CHARLOTTE DIVISION
3:17-cv-134

| | | |
|---|---|---|
| **NARESH C. ARORA**, | ) | |
| **SUDHA ARORA** | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **REUBEN DANIELS, JR.,** *et. al*, | ) | |
| | ) | |
| **Defendants**. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon four Motions to Dismiss and a Motion to

Strike Answer.  The Motions are fully briefed and are ripe for decision.

## I.  BACKGROUND

### A.  Mr. Arora's Employment Before March 17, 2015

According to the Complaint, Mr. Naresh Arora and Mrs. Sudha Arora ("Plaintiffs" or

"the Aroras") are originally from India.  In 2014, Mr. Arora signed a one-year employment

contract with Rowan-Cabarrus Community College ("RCCC") and began working as Chair of

the Electronics Engineering Technology Program on August 11, 2014.  Mrs. Arora was not

employed by or a student enrolled at RCCC.  Van Madray was Mr. Arora's direct supervisor at

RCCC.  Stephen M. Cathcart,[1] Nekita Eubanks, and Tina M. Haynes were employees of RCCC

in the Human Resources Department during the relevant time period.

Plaintiffs allege that in October 2014, Mr. Arora informed Madray in writing that he had

been discriminated against by his peers and that Madray did not respond or attempt to address

the situation.  On January 8, 2015, Plaintiffs allege Madray changed Mr. Arora's course

---

[1] Plaintiffs have misspelled Mr. Cathcart's name as "Stephlyn M. Cattent" in the Complaint.

assignments in violation of RCCC policy in order to suit the needs of a white employee. In response, Mr. Arora filed a written discrimination complaint against Madray to Eubanks on January 12. After meeting with Mr. Arora on January 14, Eubanks stated that there was no merit to the discrimination complaint and did not provide any further response. Plaintiffs allege that Eubanks and Haynes then began to harass and discriminate against Mr. Arora by scheduling meetings without giving Mr. Arora time to prepare and setting them at times that conflicted with Mr. Arora's schedule.

Plaintiffs also allege that Madray, Eubanks, and Haynes asked Mr. Arora to meet with them without providing him an agenda for the meeting in advance. Mr. Arora was allegedly asked to meet with them on January 9, 16, 20, and 29, and March 6, 2015, but he refused because he believed they were going to fire him.

**B. The March 17, 2015 Incident**

RCCC was closed from March 7 through March 15 for spring break. Plaintiffs allege that Mr. Arora notified Madray and Eubanks on March 16 that he would not come to work on March 16 and 17 due to sickness.

Plaintiffs allege that after Mr. Arora was absent from work on March 16 and 17, 2015, Madray asked defendant-police officers Damian Josey,[2] Brett Wilhelm,[3] and Laura Smith (collectively, the "Officers") to go to his house and check on his health. The Officers all were employed by the City of Kannapolis. Plaintiffs allege that this was a conspiracy between Madray and the Officers to kill Mr. Arora or otherwise deprive him of his liberty by having him civilly committed.

---

[2] Josey is also a part-time employee of RCCC.
[3] Wilhelm was also a student at RCCC at the time.

The Officers went to the Aroras' apartment in Legacy Grand at Concord Apartments ("Legacy Apartments").  When Plaintiffs did not answer the door for the Officers, the Officers used flashlights to look in Plaintiffs' car and vandalized it in the process.  The Officers also allegedly sexually harassed Mrs. Arora by "looking through open shutter windows of the apartment at night."  The Officers then obtained duplicate keys to Plaintiffs' apartment from Nancy Jenkins, the Legacy Apartments manager at the time, and entered the apartment.  Mr. Arora locked himself in the bedroom, and the Officers told Mrs. Arora that they wanted to check on Mr. Arora because he had not come to work.  When the Officers knocked on the bedroom door, Mr. Arora called 911, and the 911 operator confirmed that the Officers were there to check on him.

The Officers then used the keys supplied by Jenkins to open the bedroom door, handcuffed Mr. Arora, and ordered him to lie face down.  Josey allegedly used "racial slur words and f* word again and again" and told Mr. Arora he was under arrest.  Josey began questioning Mr. Arora and Smith hit him in the leg repeatedly.  Mr. Arora refused to respond to their questions.  Smith and Wilhelm then began to search the entire apartment and questioned the Aroras about certain medicines or spices they found.  Josey told Mr. Arora that if he did not answer the Officers' questions, he would have to go to the hospital.  Josey and Wilhelm then called the 911 operator and told her that Mr. Arora was unconscious and needed an ambulance.

Joseph Coyle and Karla Brown, Field Training Officers who worked for Emergency Medical Services ("EMS") of Cabarrus County then arrived at Plaintiffs' apartment with an ambulance, boarded Mr. Arora into the ambulance, and began driving him to the hospital.  Inside the ambulance, Mr. Arora broke his silence and objected to the transport to the hospital.  Coyle

and Brown allegedly refused to let him out after repeated requests and prepared a report admitting that there was no emergency requiring Mr. Arora to be taken to the hospital.

Once they arrived at Carolina Healthcare System NorthEast ("the Hospital"), Plaintiffs allege that Mr. Arora was guarded for at least half an hour by six security guards and Concord Police Officers, who did not allow him access to drinking water. Just after midnight, Dr. Melora T. Driver told Mr. Arora that she would have to run some diagnostic tests. Plaintiffs allege that the Officers and Coyle and Brown instructed Dr. Driver to manufacture a mental illness problem in order to send him to a mental institution. When Mr. Arora asked to leave, Dr. Driver released him.

Cabarrus County EMS billed Plaintiffs $394.04 for the ambulance, which it attempted to collect multiple times. On May 30, 2016, notice was sent by Tonya Ligon of Cabarrus County EMS that if the bill remained unpaid the amount owed would be offset by Mr. Arora's state tax refund. On September 26, 2016, the North Carolina Department of Revenue sent Mr. Arora a letter stating that $380.45 had been paid to Cabarrus County EMS from the Aroras' state income tax withholding.

### C. Mr. Arora's Employment After March 17, 2015

Plaintiffs allege that the March 17, 2015 incident caused traumatic shock and resulted in "grave, long lasting serious mental health and physical health problems." As a result, Mr. Arora was forced to take sick leave for medical treatment. Although the Complaint is unclear on exactly which dates the letters were sent, Plaintiffs allege that Haynes and Eubanks sent three Written Warnings to Mr. Arora by mail and email between April 20 and 29, 2015 for failing to show up to work. (*See* Compl. at 14–15, 26–27)

On April 29, 2015, Mr. Arora filed objections to the Written Warnings. On May 6, 2015, Mr. Arora applied for leave under the Family Medical Leave Act ("FMLA"). On May 8, 2015, Eubanks approved five weeks of FMLA leave, through June 12, 2015. On June 15, 2015, Mr. Arora requested an additional five weeks of leave. Haynes replied on June 25, 2015, stating that the request was denied because Mr. Arora had exhausted the entire twelve weeks of statutory leave. The letter from Haynes further stated that "With no additional leaves available to you, your employment ends effective immediately."

### D. Mr. Arora's EEOC Charge

Plaintiffs further allege that Mr. Arora filed or attempted to file charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants Madray and RCCC several times and that these charges were improperly dismissed.

First, Plaintiffs claim that Mr. Arora submitted an intake questionnaire to the EEOC on January 14, 2015, and was told that the alleged facts do not rise to the level that the EEOC would investigate. Second, on January 7, 2016, Mr. Arora filed a new EEOC intake questionnaire, and a charge of discrimination form was issued by the EEOC. On August 1, 2016, the EEOC sent a letter stating that the charge was dismissed because it was filed more than 180 days from the last alleged discriminatory action. The letter contained a notice of the 90-day period to file a lawsuit. Third, on November 7, 2016, Mr. Arora filed another EEOC charge. This charge was also dismissed as untimely on November 23, 2016 by the EEOC. Mr. Arora was notified of the dismissal through a letter sent by Reuben Daniels, Jr., Director of the Charlotte office of the EEOC. And fourth, Plaintiffs allege that Mr. Arora corrected the errors from previous forms and submitted an amended EEOC Form 5 on January 27, 2017.

### E. Plaintiffs' Complaint

Plaintiffs filed this Complaint on March 17, 2017, alleging seven counts against Daniels, the EEOC, Madray, Cathcart, Eubanks, Haynes, Josey, RCCC, Jenkins, Legacy Apartments, Wilhelm, Smith, City of Kannapolis, Coyle, Brown, Ligon, County of Cabarrus, 911 Operators of Cabarrus County, County of Cabarrus, Driver, Carolina Healthcare System Northeast, and John/ Jane Does 1–100.

Four groups of Defendants have filed motions to dismiss pursuant to Rule 12(b)(1), 12(b)(5), and 12(b)(6), as discussed below. Plaintiff has also filed a motion to strike portions of the answers filed by Defendants City of Kannapolis, Josey, Smith, Wilhelm, County of Cabarrus, and Tonya Ligon.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a court must first determine whether the defendant is alleging a lack of jurisdiction based on the face of the Complaint or as a factual matter. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Different standards of review apply to the two scenarios. *Id.* "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id.* at 193. But, "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.* Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

With respect to a motion to dismiss under Rule 12(b)(5) for insufficient service of process, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). This is because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, the Fourth Circuit requires district courts to construe *pro se* complaints liberally to ensure that valid claims do not fail for lack of legal specificity. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Ensuring that form does not trump substance also requires courts to "look beyond the face of the complaint to allegations made in any additional materials filed by

the plaintiff" to determine whether a *pro se* plaintiff can survive a motion to dismiss. *Garrett v. Elko*, 120 F.3d 261, * 1 (4th Cir. 1997) (per curiam table decision) (referencing *Gordon*, 574 F.2d at 1149–51). However, this liberal construction need not extend to outright advocacy for the *pro se* plaintiff. *Gordon*, 574 F.2d at 1151. *Pro se* plaintiffs, with the assistance of the district court's lenient eye, must still do more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted). Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). In light of *Twombly* and *Bass*, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will simply not suffice.

### III. DISCUSSION

**A) Motion to Dismiss: RCCC Defendants**

Defendants Madray, Cathcart, Eubanks, Haynes, and RCCC (collectively, the "RCCC Defendants") jointly filed a partial motion to dismiss under Rules 12(b)(1) and 12(b)(2). (Doc. No. 22).

As an initial matter, Plaintiffs requested in their response that the Court strike this motion as procedurally improper and sanction the attorney representing the RCCC Defendants because the Federal Rules of Civil Procedure do not provide for a "partial motion to dismiss." Plaintiffs also allege that the filing of this motion amounts to wire fraud and mail fraud. The Court finds that this motion is properly before the Court and that no sanctions are warranted. By styling the motion as a "partial motion to dismiss," the RCCC Defendants are merely filing a motion to dismiss with respect to some of the claims contained in the Complaint. Further, the arguments contained in the partial motion to dismiss are in no way frivolous or an obstruction of justice.

Accordingly, the Court denies this request to strike and for sanctions and turns to the merits of the partial motion to dismiss.

### 1) Title VII Claim (Second Count)

Although Plaintiffs do not identify it as a separate count, the Complaint in passing states under the Second Count that Mr. Arora's termination violated Title VII. (Compl., ¶ 123). The RCCC Defendants initially moved for the Court to dismiss this claim for lack of subject matter jurisdiction. In their response, Plaintiffs stated that they "had not alleged Title VII claim." (Doc. No. 28, at 4).

Accordingly, to the extent that the Complaint contains an allegation of a violation of Title VII against the RCCC Defendants, the Court finds that Plaintiffs have abandoned the claim and it must therefore be dismissed.

### 2) Employment-Related Procedural Due Process Claim (Second Count)

The RCCC Defendants next move to dismiss the employment-related procedural due process claims filed against them under 42 U.S.C. § 1983.

The Fourteenth Amendment, in relevant part, provides that "no state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Congress, through 42 U.S.C. § 1983, created a private cause of action for individuals who have been deprived of their rights under the Constitution and laws of the United States to seek relief against state actors. In order to succeed on a § 1983 due process claim, a public employee must show (1) "that he has a constitutionally protected 'liberty' or 'property' interest," and (2) "that he has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).

Here, Plaintiffs appear to allege that Mr. Arora had a property interest in the RCCC Defendants following proper procedure with respect to the scheduling of meetings and the Written Warnings he received. Plaintiffs provide no legal authority supporting this claim as it pertains to the meeting requests and letters themselves, and the Court finds none. Thus, to the extent that the Complaint alleges a violation of procedural due process in the meetings and letters, such a claim must be dismissed. Plaintiffs also, however, allege a procedural due process claim with respect to the termination of Mr. Arora's employment with RCCC. This must be discussed in more depth.

First, Plaintiffs allege that Mr. Arora had a property interest in his continued employment with RCCC. The Complaint alleges that Mr. Arora was a "Permanent (Covered) Civil Service Employee" who "could not be terminated without cause." (Compl., at 2–3). Further, as alleged, the contract stated that Mr. Arora's position was for a one-year term which would not have expired until August 2015. Thus, assuming the allegations of the Complaint to be true, there is "no question" that Mr. Arora had a constitutionally protected property interest in his continued employment with RCCC, at least through the duration of his contracted term of employment. *See Stone*, 855 F.2d at 172.

Plaintiffs also allege that Mr. Arora had a liberty interest that was violated by his termination. The Supreme Court has held that interests of liberty may be implicated where a charge is made against an employee "that might seriously damage his standing and associations in his community" or that might impose on an employee "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). However, Plaintiffs have not alleged any facts supporting such a deprivation arising from Mr. Arora's termination. Thus, as the Supreme Court

stated in *Roth*, while some employment cases might implicate a liberty interest, "this is not such a case." *Id.*

Second, Plaintiffs allege that Mr. Arora was deprived of his property rights by state actors (the RCCC Defendants) without due process. The RCCC Defendants contend, however, that the fact that Mr. Arora received due process before his termination is clear from the face of the Complaint. The Complaint alleges that Madray, Eubanks, and Haynes attempted to meet with Mr. Arora on multiple occasions between January and March, 2015, and sent him three Written Warning letters during his period of absence from work without proper leave. Mr. Arora declined to attend the meetings, but he did write an objection to the Written Warning letters.

While Plaintiffs allege that Mr. Arora was terminated in violation of the internal procedures of RCCC, in a procedural due process claim, "any internal procedures are irrelevant if they grant more rights than required by the constitution." *Doe v. Alger*, 228 F. Supp. 3d 713, 729 (W.D. Va. 2016). This is because "hold[ing] that a state violates the Due Process Clause every time it violates a state-created rule regulating the deprivation of a property interest would contravene the well-recognized need for flexibility in the application of due process doctrine." *Riccio v. Cty. Of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). Thus, this Court must determine whether the procedure provided for by the RCCC Defendants prior to Mr. Arora's termination was sufficient as a constitutional matter, not as a matter of internal policy and procedure.

The minimal due process rights required before termination are adequate notice and an opportunity to be heard in one's defense. *Roth*, 408 U.S. at 573; *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984). Here, Mr. Arora clearly received adequate notice that he was at risk of termination. Madray, Eubanks, and Haynes attempted to meet with Mr. Arora

several times in the months leading up to his termination.  Further, Mr. Arora received three

Written Warnings more than a month in advance of his termination.  Plaintiffs argue that Mr.

Arora did not have an opportunity to be heard in his defense, but the Complaint shows that he

refused to attend the meetings and was able to submit an objection to the Written Warnings.

Only after Mr. Arora continued to not show up for work for two weeks after RCCC had

determined his leave expired did RCCC terminate his employment.[4]  Based on these allegations,

the Court finds that Plaintiffs have not alleged sufficient facts to support a claim for a procedural

due process claim against the RCCC Defendants.  Thus, this claim must be dismissed with

respect to these Defendants.

### 3) 42 U.S.C. § 1981 Claims (Fourth Count)

The RCCC Defendants also move to dismiss Plaintiffs' claims that they discriminated on

him on the basis of race in violation of 42 U.S.C. § 1981.

Plaintiffs allege that the RCCC Defendants violated § 1981 in several ways: (1) by

sending the Officers to break into Plaintiffs' apartment with the intent to kill Mr. Arora or place

Mr. Arora in a mental institution so that RCCC could terminate him for failing to show up to

work; (2) by attempting to meet with Mr. Arora without providing advance notice of an agenda;

(3) by reprimanding Mr. Arora after "falsely saying that [he] failed to follow the sick leave

procedure;" (4) by terminating Mr. Arora on June 25, 2015 after "saying that Arora's family

medical leave was over;" (5) by hiring Madray as Dean of Engineering Technology instead of

Mr. Arora; and (6) by terminating Mr. Arora in retaliation for his filing of a discrimination

complaint against Madray.

---

[4] Plaintiffs also allege that RCCC improperly calculated the amount of leave Mr. Arora was due under the FMLA and terminated him in violation of that statute.  That issue does not bear on the sufficiency of notice under the Due Process Clause and is not at issue in this motion to dismiss.

The first five allegations above arise under a "status-based" claim of discrimination, *i.e.*, harm because of "who" the Plaintiffs are. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 456 (2008). The sixth allegation is for retaliation and is a claim of discrimination based on Plaintiff's conduct. *See id.* Both status and conduct-based discrimination are prohibited by § 1981. *Id.*

In order to allege a status-based § 1981 claim, a plaintiff must show that "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Bobbit by Bobbit v. Rage, Inc.*, 19 F. Supp. 2d 512, 517 (W.D.N.C. 1998) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). With respect to the second element, a plaintiff does not need to allege a prima facie case of intentional discrimination pursuant to the *McDonnell Douglas* evidentiary standard, but the plaintiff must allege sufficient facts to support a reasonable inference that the defendant's action was motivated by race. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).

Here, Plaintiffs clearly allege the first element by stating that Mr. Arora is of the Asian race and has brown skin. Plaintiffs also allege facts supporting the third element, as the alleged discrimination concerned the making and enforcing of employment contracts with RCCC, and the statute covers "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The second element, however, is unsatisfied. For the first four status-based allegations, Plaintiffs provide no support for the required element that the RCCC Defendants' conduct was motivated by Mr. Arora's race. Rather, Plaintiffs merely include conclusory statements that the

actions were made based on Mr. Arora's race without alleging that similarly-situated employees outside of his protected class were treated differently, that any comments were made expressing a discriminatory motive,[5] that the timing of these actions supported an inference of racial discrimination, or that any other members of a protected class received similar treatment. *See Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) ("Luy's conclusory allegations of race discrimination, devoid of any reference to actual events during his employment, are not sufficient to state a claim under Title VII or § 1981 for race discrimination."). Only the fifth allegation, concerning the hiring of Madray for the position of Dean of Engineering Technology, provides some factual support by claiming that Madray is white and less qualified than Mr. Arora. But, the Complaint never alleges that Mr. Arora even applied for or was considered for the position in question. Thus, this claim also fails to allege a plausible claim of racial discrimination. *See Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 928 F.2d 118, 121 (4th Cir. 1991) (requiring a plaintiff to prove that he "applied for the position in question").

The sixth claim is for retaliation in violation of § 1981. In order to state a plausible claim of retaliation, a plaintiff must allege that: (1) he engaged in protected activity under the statute, (2) he suffered a materially adverse employment action, and (3) a causal link exists between the protected activity and the employment action. *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 829 (4th Cir. 2016). The Complaint alleges that Mr. Arora filed an internal complaint about discriminatory conduct and that he was terminated. But, the Complaint alleges no facts

---

[5] The Complaint does allege that Officer Josey made discriminatory remarks during the March 17, 2015 incident, but there is no allegation that those remarks were encouraged by or even known by the RCCC Defendants prior to the filing of this Complaint.

supporting a causal link aside from Plaintiffs' conclusory statements, and it thus fails to state a valid claim for retaliation.

Accordingly, the Court finds that the factual allegations in the Complaint against the RCCC Defendants do not rise to the level of a plausible claim for discrimination in violation of § 1981.

### 4) Title VI Claim (Sixth Count)

The RCCC Defendants also move to dismiss the claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*

Plaintiffs allege that the RCCC Defendants violated Title VI by retaliating and terminating Mr. Arora on the basis of his race and national origin. The elements of a Title VI retaliation claim mirror those of a suit under § 1981: the plaintiff must allege that (1) he or she engaged in a protected activity, (2) he or she was subjected to an adverse employment action, and (3) there is a causal link between the adverse action and the protected activity. *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 84 (D.D.C. 2003). Additionally, the statute requires a program to receive "Federal financial assistance" in order to be liable under Title VI. 42 U.S.C. § 2000d. In order to satisfy this requirement, a plaintiff must allege "either (1) that a primary objective of the federal funding defendant receives is to provide employment, or (2) that the employment discrimination complained of necessarily causes discrimination against the intended beneficiaries of the federal funding." *Rogers v. Bd. of Educ. of Prince George's Cty.*, 859 F. Supp. 2d 742, 750 (D. Md. 2012).

Here, Plaintiffs' claim for retaliatory termination fails for the same reason as it failed under § 1981: the Complaint does not allege facts supporting a causal link between the filing of the complaint and the termination. Further, the Complaint does not allege with particularity that

the federal funding received by RCCC is for employment purposes or that Mr. Arora's termination causes discrimination against the intended beneficiaries of the funding.

Thus, this claim must be dismissed against the RCCC Defendants.

### 5) Title IX Claims (Sixth Count)

The RCCC Defendants also move to dismiss the claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

Plaintiffs first claim that Mr. Arora was a victim of sex discrimination in his termination. Plaintiffs also claim that Mrs. Arora was subject to sex discrimination through the actions of the Officers when they used the duplicate key to enter Plaintiffs' apartment on the evening of March 17, 2015 and attempted to separate Mr. Arora from Mrs. Arora so that Officer Josey could "start dating" Mrs. Arora.

With respect to Mr. Arora's claim of sex discrimination in his termination, the Court finds that the Complaint contains no factual allegations supporting this claim. 20 U.S.C. §1681 states in relevant part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Accordingly, a plaintiff must allege facts sufficient to support a reasonable inference that the defendant's action was made *on the basis of sex*. Similar to the claims for race discrimination, Plaintiffs have not alleged any facts showing that there was an intent to terminate Mr. Arora on the basis of his sex or that similarly-situated members of the opposite sex were treated more favorably. Accordingly, the sex discrimination claim on behalf of Mr. Arora must be dismissed.

Next, the RCCC Defendants argue that Mrs. Arora lack standing to bring a Title IX claim against them as she was not an employee, student, or applicant of RCCC at the time of the

alleged discrimination.  Mrs. Arora certainly has constitutional standing as the Complaint contains allegations of injury to her property and privacy interests, but the RCCC Defendants contend that Title IX statutorily limits who is able to sue a school or college for sex discrimination.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  The statute has been interpreted, based on its plain language, to only apply to students and participants in educational programs.  *See Preyer v. Dartmouth Coll.*, 968 F. Supp. 20, 25 (D.N.H. 1997) (citing several cases).  And the Fourth Circuit has held that in order to establish a Title IX claim on the basis of sexual harassment a plaintiff must first show "she was a student at an educational institution receiving federal funds."  *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

While other courts have extended the protections of Title IX to individuals who have already applied to a school but not yet enrolled, this Court has found no authority supporting a Title IX claim on behalf of an individual claiming to be a "potential student" who was harassed "[b]efore she sought admission."  The closest authority is *K.T. v. Culver-Stockton College*, No. 4:16-CV-165, 2016 WL 4243965 (E.D. Mo. 2016), where a high school junior visited a college as a potential recruit for the women's soccer team and was physically assaulted by a student of the college.  In that case, the district court found that because the plaintiff did not attend the college or receive federally-funded educational benefits from it, she could not assert a claim for money damages against the school.  *Id.* at *4.  On appeal, the Eighth Circuit affirmed the district

court's motion to dismiss without deciding the issue of whether a non-student could sue under Title IX. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017).

Because there is no authority in this Circuit or elsewhere supporting Mrs. Arora's statutory standing to bring suit against an institution which, at the time of the allegations, she did not attend, was not an applicant for, and did not receive federal educational benefits from, her claims under Title IX must be dismissed.

### 6) **Fair Housing Act Claims (Count Five)**

The RCCC Defendants next move to dismiss the claims against them under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*

Although most of the allegations in this claim concern Legacy Apartments and Jenkins, the Complaint alleges a violation by "all defendants" and claims specifically that Madray directed the Officers to commit "sexual harassment by Josey to Su, attempted Murder, Assault, Battery, Conversion, Kidnapping, and Intentional Infliction of Emotional Distress" in violation of §§ 3604(b) and 3617.

42 U.S.C. § 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." In turn, 42 U.S.C. § 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Accordingly, the Court assumes that Plaintiff is alleging that Madray, as a third party unrelated to the provision of housing for the Plaintiffs, interfered with their exercise or enjoyment of the terms of their housing on the basis of Plaintiffs' race, color, religion, and national origin.

In order to prove an intentional discrimination violation of § 3617, a plaintiff must show that (1) he or she "is a protected individual under the FHA," (2) he or she "was engaged in the exercise or enjoyment of [his or her] fair housing rights," (3) "the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [his or her] protected activity under the FHA," and (4) "the defendants were motivated by an intent to discriminate." *Radcliffe v. Avenel Homeowners Ass'n, Inc.*, No. 7:07-cv-48-F, 2013 WL 556380, at *6 (E.D.N.C. Feb. 12, 2013).

Here, Plaintiffs fail to allege any facts supporting the third and fourth elements of this claim against any of the RCCC Defendants. They do not allege that they were harassed on account of engaging in protected activity under the FHA; rather, they claim that Madray sent the Officers to harass them so that Madray and the other RCCC Defendants could terminate Mr. Arora's employment. Nor do Plaintiffs allege any facts supporting the element of an intent to discriminate. It is insufficient to merely state that they belong to a protected class and were subject to harassment. Rather, a plaintiff must allege that the harassment resulted from their protected status.

### 7) Per Se Negligence Claim Against Madray (Count Seven)

Finally, Madray moves to dismiss the claim of negligence per se brought against him.

In the Seventh Count, Plaintiffs allege that the Officers violated several criminal and civil statutes on the evening of March 17, 2015. Plaintiffs further allege that "[i]t was a duty of Madray to let the Officers know, not to engage in any act in violation of these Public Safety Statutes," and that Madray breached this duty by "direct[ing] the Officers to go ahead and engage in violations of the aforementioned public safety statutes." (Compl., 45). Accordingly, Plaintiffs allege that Madray is liable for negligence per se.

This claim arises under North Carolina law, and Plaintiffs have alleged that the Court has supplemental jurisdiction over it. "The general rule in North Carolina is that the violation of a public safety statute constitutes negligence *per se*." *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 266 (N.C. 2006) (quoting *Byers v. Standard Concrete Prods. Co.*, 151 S.E.2d 38, 40 (1966)). "A public safety statute is one 'imposing upon the defendant a specific duty for the protection of others.'" *Id.* (quoting *Lutz Indus., Inc. v. Dixie Home Stores*, 88 S.E.2d 333, 339 (1955)) (internal alterations omitted). To state a claim of negligence per se, a plaintiff must allege:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and (6) that the violation of the statute proximately caused the injury.

*Hardin v. York Mem. Park*, 730 S.E.2d 768, 776 (N.C. Ct. App. 2012).

The existence of a legal duty is a threshold requirement for any negligence action. *See Hall v. Toreros, II, Inc.*, 626 S.E.2d 861, 867 (N.C. Ct. App. 2006). The Complaint alleges that Officer Josey was a part-time employee at RCCC and Officer Wilhelm was a student at RCCC, but there is no allegation that they were acting within the scope of an employment or academic obligation to RCCC when they visited Plaintiffs' home on March 17, 2015. In order for a duty to prevent criminal activity by a third party to arise under North Carolina law, there must be a "special relationship" between the defendant and the third party such that "(1) the defendant knows or should know of the third person's violent propensities and (2) the defendant has the ability and opportunity to control the third person at the time of the third person's criminal acts." *Stein*, 626 S.E.2d at 330. "The ability and opportunity to control must be more than mere physical ability to control. Rather, it must rise to the level of custody, or legal right to control."

*Scadden v. Holt*, 733 S.E.2d 90, 93 (N.C. Ct. App. 2012). This is a high bar, and the allegations of the Complaint clearly fail to meet both the first and second requirements.

Further, even assuming that Madray had the requisite ability to control Josey and Wilhelm, none of the statutes cited in the Complaint places any affirmative duty on an employer to instruct his employees not to violate them. Because none of the statutes impose a duty on Madray, he cannot be liable for negligence per se, even if the statutes were violated by the Officers.

Thus, the negligence per se claim against Madray must be dismissed.

**B) Motion to Dismiss: Defendants Joseph Coyle and Karla Brown**

The Court now turns to the second of four motions to dismiss filed in this action. Defendants Coyle and Brown jointly filed a motion to dismiss for insufficient service of process, pursuant to Fed. R. Civ. P. Rule 12(b)(5). (Doc. No. 19).

Plaintiffs, in response, ask the Court to hold in contempt the lawyer representing Brown and Coyle, as well as two individuals who submitted affidavits related to the question of proper service. This request is completely without merit and is denied.

According to the Complaint, Coyle and Brown are Field Training Officers who worked for Emergency Medical Services ("EMS") of Cabarrus County as of March 17, 2015. On that date, Plaintiffs allege Coyle and Brown arrived at Plaintiffs' apartment with an ambulance, boarded Plaintiff Naresh Arora in the ambulance, and drove him to the hospital against his will. Accordingly, Plaintiffs allege that Coyle and Brown committed "negligence per se for violating the statutes for the public safety protections of others" (Seventh Count).

Rule 4(e) authorizes four methods of proper service of process: (1) following relevant state law for service of process, (2) "delivering a copy of the summons and complaint to the

individual personally," (3) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). In addition to the above-mentioned methods, North Carolina law allows service of process on a natural person to be effectuated by sending, through registered or certified mail or a "designated delivery service," a copy of the summons and complaint and delivering such copy to the addressee. N.C.G.S. § 1A-1, Rule 4(j)(1).

Here, Plaintiffs sent a copy of the summons and complaint for both Coyle and Brown by FedEx Ground to the Cabarrus County EMS facility. Tonya Ligon ("Ligon"), a billing clerk for Cabarrus County EMS, received the packages. Ligon is authorized to accept deliveries for Cabarrus County EMS, but not for other employees. Neither Coyle nor Brown received service personally, reside at the address of the Cabarrus County EMS, or received delivery of service as addressees. Thus, Plaintiffs have not properly served Coyle and Brown pursuant to Rule 4(e).

If the service of process "is insufficient, the court has broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." *Ballard v. PNC Fin. Servs. Grp., Inc.*, 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009) (quoting *Cranford v. United States*, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005)). Similarly, a court must either dismiss an action without prejudice or order that service be made within a specific time if proper service is not made within the requisite time period. Fed. R. Civ. P. 4(m). Relevant to this matter, *pro se* litigants attempting to effectuate service of process are entitled to more latitude than litigants represented by counsel, especially when a defendant does receive actual notice of the lawsuit. *Gulley v. Rex Hosp., Inc.*, No. 5:14-cv-127-F, 2014 WL 4537185, at *2 (E.D.N.C. Sep. 11, 2014); *Ransom v. Nationstar Mortg. LLC*, No. GJH-15-1647, 2016 WL 1064454, at *3 (D. Md.

Mar. 14, 2016).  Thus, the Court will deny the motion to dismiss for insufficient service at this time.  However, because the correct procedure for effectuating service must be followed, the Court will quash the service of process and order Plaintiffs to properly serve Defendants Coyle and Brown within sixty (60) days of the entry of this Order.

**C)  Motion to Dismiss: Defendant Carolina Medical Healthcare Systems NorthEast**

Defendant Carolina Medical Healthcare Systems NorthEast ("the Hospital") also filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6).  (Doc. No. 24).

Plaintiffs responded, and again, among its substantive responses, Plaintiffs ask the Court to impose sanctions on the attorneys representing the Hospital and hold them in contempt.  These requests have no merit and are denied.

The Hospital requests the Court to dismiss the claims against it for lack of subject matter jurisdiction under the substantiality doctrine.  The substantiality doctrine holds that "federal courts are without power to entertain claims within their jurisdiction if they are so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion." *Davis v. Pak*, 856 F.2d 648, 650–51 (4th Cir. 1988) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)) (internal quotations omitted).  The "insubstantiality threshold is a difficult one to meet," and should not be used merely when claims are "doubtful on the merits." *Id.* at 650.

Here, Plaintiffs' Complaint spans forty-nine pages and is largely grounded in a theory that the Defendants (excluding the EEOC and Daniels) all conspired to kill or involuntarily commit Mr. Arora to a mental institution.  In spite of the breadth of the Complaint, the Court only finds a few allegations made against the Hospital:

- "On March 17, at about 11:00pm, Coyle/Brown already executed another contract #4 with the Hospital" without Mr. Arora's knowledge or consent.  "They together

conspired to set the terms and conditions of the Contract #4" in order to civilly commit Mr. Arora; (Compl., 36)

- Once the ambulance arrived at the Hospital at approximately 11:15pm, "Coyle/Brown dropped Arora in a secluded room and ordered not to get up from stretcher and leave the area;"  (Compl., 25–26)

- Hospital security "guarded" Mr. Arora for about half an hour "under the direction of Dr. Driver, aiding and abetting Coyle/Brown acting under color of law, [to] deprive[] liberty interest without due process;" (Compl., 13)

- Dr. Driver met with Mr. Arora, told Mr. Arora that she intended to run some diagnostic tests, and then released Mr. Arora at approximately 12:30am when he told her he wanted to leave; (Compl., 13–14)

- The Hospital is per se negligent for violating the public safety statutes regarding kidnapping and felonious restraint because "it was the duty of the In-take Nurse of the Hospital NOT to admit Arora in the Emergency room as there was no emergency" and the other Defendants did not have a custody order for involuntary commitment from a magistrate; (Compl., 46)

- The Hospital is "also liable for the damages suffered under vicarious liability" from the discriminatory housing practices that Legacy Apartments and Jenkins imposed on the Plaintiffs (Compl., 40)

Additional allegations are made against Dr. Driver and the EMS Officers, Coyle and Brown. However, the Complaint acknowledges that these individuals were not employed by the Hospital.

Plaintiffs' claim that the Hospital conspired with the other Defendants to murder or civilly commit Mr. Arora is bizarre and unpersuasive in light of the fact that Mr. Arora spent a little over one hour at the Hospital and was released upon his own request.  Further, the factual allegations against the Hospital do not support any claim of deprivation of rights under color of state law, unlawful discrimination, or negligence.  "The liberal construction which we are obliged to afford to a pro se complaint is not without bounds."  *Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 F. App'x 278, 291 (4th Cir. 2013).  Rather, when the allegations against

a defendant are clearly frivolous, without merit, and conclusory, as they are against the Hospital, dismissal for insubstantiality is proper.  *See id.* at 292.

Accordingly, the Court finds that there is no subject matter jurisdiction to consider the claims against the Hospital and that they must be dismissed under Rule 12(b)(1).

## D)  Motion to Dismiss: Defendants EEOC and Reuben Daniels, Jr.

Defendants EEOC and Daniels jointly filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6).  (Doc. No. 26).

Plaintiff Naresh Arora alleges that he filed charges of discrimination with the EEOC against Defendants Madray and RCCC, and that the EEOC and Daniels violated his Fifth Amendment rights by dismissing and refusing to reopen his EEOC complaint.  Plaintiffs assert multiple claims against Defendants EEOC and Daniels in the Complaint.

### 1)  Mandamus Action (First Count)

Plaintiff Naresh Arora alleges that he is entitled to a writ of mandamus against the EEOC and Daniels under 28 U.S.C. § 1651, whereby the Court should set aside the EEOC Dismissal Order and issue injunctive relief requiring the EEOC and Daniels to provide due process in a new adjudicative decision.  Defendants EEOC and Daniels first argue that this Court does not have subject matter jurisdiction to hear the mandamus claim.

As a threshold matter, Plaintiff's mandamus claim must be interpreted to only be against the EEOC.  This is because the nominal suit for mandamus against Daniels is brought against him in his official capacity as Director of the Charlotte office of the EEOC.  Count One of the Complaint refers exclusively to actions taken by Daniels in his capacity as an official of the United States and seeks relief that would apply to future directors of the Charlotte office of the EEOC.  *See Stafford v. Briggs*, 444 U.S. 527, 544 (1980) ("When an official leaves office, his

personal involvement in a mandamus suit effectively ends and his successor carries on."). Further, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). Thus, Plaintiff's mandamus claim applies only against the EEOC.

District courts have original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "[t]he extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). A party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)).

Because mandamus is a "drastic" remedy, *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), a court can exercise discretion to grant it "only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff," *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005).

The EEOC has a statutory duty, if a charge is filed within one-hundred and eighty days of an alleged unlawful employment practice, to serve a notice of the charge on the employer, to "make an investigation thereof," and to inform a claimant of his or her right to sue upon completion of the EEOC investigation. *See* 42 U.S.C. § 2000e-5. However, "the EEOC's decision on how to investigate a claim is wholly a matter of agency discretion." *Martin v. U.S. E.E.O.C.*, 19 F. Supp. 3d 291, 303 (D.D.C. 2014); *see also E.E.O.C. v. Am. & Efird Mills, Inc.*,

964 F.2d 300, 303 (4th Cir. 1992) (finding that the EEOC has authority to conduct investigations at its own discretion).

Taking judicial notice of the EEOC charges and dismissals that have been filed in this matter (Doc. No. 22, Exs. 1–4), the Court finds that one EEOC charge was filed by Plaintiff Naresh Arora on January 7, 2016, alleging that the last unlawful employment practice occurred on June 25, 2015. The EEOC sent timely notice of this charge to RCCC and dismissed the charge on August 1, 2016, finding that it was not filed within one-hundred and eighty days from the last unlawful employment practice. The EEOC included a right to sue notice in its dismissal. It is clear that the EEOC fulfilled all of its statutory duties with respect to this charge.

Plaintiffs, however, allege that Plaintiff Naresh Arora filed a prior EEOC charge on January 14, 2015, as well as later charges on November 7, 2016, and January 27, 2017, and that the EEOC failed to provide proper notice to RCCC and did not conduct an investigation with respect to these charges. Assuming that these actions rise to the level of a failure to meet the EEOC's statutory duties and are not purely discretionary, Plaintiffs are still not entitled to mandamus jurisdiction because there is an adequate alternative remedy to requiring the EEOC to conduct an investigation: filing a Title VII complaint in federal court. Plaintiffs received notice of this alternative remedy in the EEOC's right to sue notice. Thus, Plaintiffs have not met their burden of showing that their right to an issuance of mandamus is "clear and indisputable." *See Will*, 389 U.S. at 96.

Plaintiffs also argue that this Court has authority to review the decision of the EEOC and subject matter jurisdiction to do so pursuant to the Administrative Procedure Act ("APA"). The Court agrees with Defendants that a request for mandamus and an injunction are clearly distinct from a request for APA review and that the latter is not alleged as a distinct count in the

Complaint. But, construing the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have raised this issue. (Compl., ¶ 99, 100).

Nonetheless, APA review is not a valid form of relief against the EEOC in this case. The APA provides for judicial review of any "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In *Nielsen v. Hagel*, 666 F. App'x 225 (4th Cir. 2016), the Fourth Circuit found that "the cause of action provided by Title VII afford[s a plaintiff] an 'adequate remedy' of judicial review for his claims of employment discrimination." *Id.* at 231. Thus, this Court does not have the authority to review final agency determinations of the EEOC when, as here, Plaintiffs could bring a de novo private cause of action against the employer under Title VII.

Accordingly, Count One must be dismissed in its entirety for lack of subject matter jurisdiction.

### 2) Remaining Claims

Additional counts in the Complaint state that they are alleged "against all defendants." These include: the Second Count, deprivation of civil rights under 42 U.S.C. §§ 1983, 1988(a); the Fifth Count, violation of Title VIII of the Civil Rights Act of 1968; and the Sixth Count, discrimination based on sex, race, color, and national origin. Defendants EEOC and Daniels assert that, to the extent these claims are alleged against them, the Court should dismiss these claims as well for lack of subject matter jurisdiction and for failure to state a claim.

It appears to the Court that there is no subject matter jurisdiction over these claims with respect to Defendants Daniels and EEOC. But even assuming that the Court did have jurisdiction, the Complaint contains no factual allegations in support of these claims with respect to Defendants Daniels and EEOC. Accordingly, these remaining counts against Defendants

Daniels and EEOC are dismissed for failure to state a claim under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679 (holding that mere legal conclusions that are not supported by factual allegations are insufficient).

**E) Motion to Strike Answer: Plaintiffs**

Plaintiffs filed a motion to strike portions of the answers filed by Defendants Tonya Ligon, County of Cabarrus, City of Kannapolis, Josey, Smith, and Wilhelm. (Doc. No. 29).

Plaintiffs argue that several of the affirmative defenses raised by these Defendants fail to meet the case or controversy requirement of Article III, Section 2, Clause 1 and the Due Process Clause of the Constitution because they do not "state the statute or published Federal/State case laws and sufficient facts" supporting these affirmative defenses.

Rule 12(f) of the Federal Rules of Civil Procedure states, in relevant part, that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted). The decision whether to strike an affirmative defense is discretionary, and "courts generally refrain from striking affirmative defenses absent a showing that not doing so would unfairly prejudice the movant." *Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 592 (D. Md. 2013).

Rule 8(b)(1) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it" and "admit or deny the allegations asserted against it." A party responding to a pleading must also "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Plaintiffs argue that the Court must review the sufficiency of

these defenses under the plausibility standard of *Twombly* and *Iqbal*.  However, nothing in *Twombly*, *Iqbal*, subsequent Supreme Court decisions, or recent Fourth Circuit decisions instructs this Court that such a standard applies to a responsive pleading.  *See LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014).  While some district courts in this circuit have applied a similar standard, this Court agrees with the reasoning in the cases that rejects such a theory.  *See, e.g.*, *id.* ("A plaintiff's complaint invokes the jurisdiction of the court and seeks affirmative relief.  An affirmative defense does neither."); *Lockheed Martin*, 973 F. Supp. 2d at 595.  Thus, the Court will not strike an affirmative defense unless it could not "constitute a valid defense to the action."  *Waste Mgmt.*, 252 F.3d at 347.

Here, the Defendants have provided adequate notice to the Plaintiffs of each of the affirmative defenses at issue, and the affirmative defenses alleged could constitute a valid defense based on the factual allegations contained in the Complaint and the respective answers.  Further, Plaintiffs have not shown how they would be prejudiced by allowing these affirmative defenses to stand.  Accordingly, the Court denies Plaintiffs' motion to strike in its entirety.

### F) *Roseboro* **Notice and Amended Complaint Requests**

In various responses filed by Plaintiffs, Plaintiffs have requested either a *Roseboro* Notice or thirty days to file an amended complaint in order to amend their pleadings or responses to allege missing elements or other deficiencies identified by the Court.

First, the Court finds that Plaintiffs timely responded to every dispositive motion filed in this matter and that no further direction from the Court is necessary through a *Roseboro* Order with respect to the motions to dismiss.  Second, it is not within the Court's domain to advise Plaintiffs how to substantively amend their Complaint in order to avoid dismissal.  Further, Plaintiffs have not filed a separate motion to amend their Complaint pursuant to Federal Rule of

Civil Procedure 15(b) or Local Rule 7.1, nor have they attached a copy of the proposed amended complaint.  Accordingly, these requests are denied.If Plaintiffs wish to amend their Complaint with respect to the counts that have not been dismissed, they must file a separate motion with the proposed amended complaint attached.

## IV.  CONCLUSION

The Court **THEREFORE ORDERS** as follows:

1. The Motion to Dismiss by Defendants RCCC, Cathcart, Eubanks, Haynes, and Madray (Doc. No. 22) is **GRANTED.**  The following claims are hereby **DISMISSED WITH PREJUDICE** with respect to the RCCC Defendants: the claims in the Second Count that are discussed in this order; the Fourth Count; the Fifth Count; the Sixth Count; and the Seventh Count.

2. The Motion to Dismiss by Defendants Brown and Coyle (Doc. No. 19) is **DENIED** without prejudice**.**  However, service of process on Defendants Brown and Coyle is hereby **QUASHED.**  Plaintiff shall have sixty (60) days from the entry of this Order to properly serve Defendants Brown and Coyle.

3. The Motion to Dismiss by Defendant Carolina Medical Healthcare Systems NorthEast (Doc. No. 24) is **GRANTED.**  Accordingly all counts are **DISMISSED WITH PREJUDICE** with respect to Defendant Carolina Medical Healthcare Systems NorthEast.  The Clerk shall terminate Defendant Carolina Medical Healthcare Systems NorthEast from this case.

4. The Motion to Dismiss by Defendants EEOC and Daniels (Doc. No. 26) is **GRANTED.**  The First Count is accordingly **DISMISSED WITH PREJUDICE** in its entirety and all remaining counts are **DISMISSED WITH PREJUDICE** with respect to Defendants

EEOC and Daniels.  The Clerk shall terminate Defendants EEOC and Daniels from this case.

5. The Motion to Strike by Plaintiffs (Doc. No. 29) is **DENIED.**


**TO THE PLAINTIFFS, READ THE FOLLOWING VERY CAREFULLY:**

You are hereby advised that you have **sixty (60)** days of the entry of this Order to properly serve Defendants Coyle and Brown pursuant to Rule 4 of the Federal Rules of Civil Procedure.  **A failure to do so may result in the claims alleged against Defendants Coyle and Brown being dismissed without prejudice**.

The Clerk is directed to send a copy of this Order to Plaintiffs' address of record.

**SO ORDERED.**

Signed: April 2, 2018

Graham C. Mullen
United States District Judge